## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

MICHAEL A. PEELER,

        Petitioner,

v.                                    Case No. 3:20-cv-230-TJC-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I.   Status

Petitioner, an inmate of the Florida penal system, is proceeding on a pro se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. 1) and Supplement (Doc. 17). He challenges a 2010 state court (Duval County, Florida) judgment of conviction for second degree murder with a firearm. He was sentenced to life in prison without the possibility of parole. Respondents filed a Response (Doc. 19) with exhibits (Docs. 19-1 to 19-2; Ex.). Petitioner, through counsel, filed a Reply (Doc. 27). This case is ripe for review.[1]

---

[1] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."

## II.    <u>Governing Legal Principles</u>

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. See <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then

---

<u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u> The Court finds that "further factual development" is unnecessary. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

> presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Richter, 562 U.S. at 101 (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal

3

courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

**B. Exhaustion and Procedural Default**

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that Boerckel applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, 513 U.S. at 365-66; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004) (internal citations modified).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>, 501 U.S. at 747-48; <u>Wainwright v. Sykes</u>, 433 U.S. 72, 84-85 (1977). A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims

> if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 131 S. Ct. 1120, 1127-28 (2011); <u>Beard v. Kindler</u>, 130 S. Ct. 612, 617-18 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S. at 750.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012) (internal citations modified). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999) (internal citations modified).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157 (internal citations modified). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); Strickland v. Washington, 466 U.S. 668, 687 (1984)). Courts employ a two-part test when reviewing ineffective assistance of counsel claims. See Strickland, 466 U.S. at 687.

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id. at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.

Richter, 562 U.S. at 104 (internal citations modified).

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation; thus, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is afforded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at 105. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014) (internal citations modified). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## III.  <u>Analysis</u>

### A. Ground One

Petitioner testified at his trial. <u>See</u> Exs. B5 at 583 to B6 at 643. In the Petition, he claims that on cross-examination, "the prosecutor's questions and comments on [Petitioner's] right to remain silent violated his Fifth and Sixth Amendment[] rights under the U.S. Constitution and Article 1, Section 9 & 12 of the Florida Constitution."[2] Doc. 1 at 4 (emphasis and capitalization omitted). Petitioner contends that "the State demanded an explanation for why [he] did not provide law enforcement with information concerning the murder," which "was an impermissible comment on his right to remain silent and an

---

[2] Any claim based on a violation of the Florida Constitution is not cognizable in this federal habeas case.

infringement upon his right to counsel." <u>Id.</u> at 11. Petitioner takes issue with

the following exchange:

> Q Now you say you were scared of Dominique, is that right, sir?
>
> A Yes, sir.
>
> Q Now you were interviewed by the detectives on October the 21st of 2009, correct?
>
> A Yes, sir.
>
> Q Today's date is April the 14th, I believe, of 2010.
>
> A Yes, sir.
>
> Q Approximately how many attempts have you made in that six, seven-month period to contact law enforcement to explain to them that you didn't do this murder?
>
> A None time.
>
> Q Excuse me?
>
> A None time, sir.
>
> Q Zero?
>
> A Zero.
>
> Q Approximately how many letters have you written to them saying Dominique did this, not me?
>
> A None.
>
> Q Sir, when you were talking to the detective - -

MS. BYNUM: Approach.

THE COURT: Mr. Garrison, hang on just a minute.

MS. BYNUM: May we approach, Your Honor?

THE COURT: Is there a legal objection?

MS. BYNUM: There is an objection. I don't know that I want to say it outloud.

THE COURT: Counsel, approach sidebar with the court reporter.

(Sidebar discussion with reporter present.)

THE COURT: What's the legal basis for the objection?

MS. BYNUM: The legal basis I feel like he's getting to a point where he's going to start commenting on my client's right to an attorney and my client hired me right out of the gate. At that point he has counsel. He doesn't need to come forward to detectives and assert a case.

THE COURT: What's your response?

MR. GARRISON: Your Honor, this defendant is claiming to this jury at this point in time that the reason he didn't come forward at any point in time is that he is scared to death of this person named Dominique.

12

My response to him is that he has the opportunity at any point in time, at any point in time during the proceedings he has the opportunity, not was he asked but he did not avail himself of an opportunity to contact law enforcement at any point in time.

THE COURT: How is his not indicating law enforcement not a comment on his right to remain silent?

MR. GARRISON: The comment on the right to remain silent is you asked a question and you chose not to respond. I have not one point in time asked him was the question posed to him and he asserted his right to counsel. He has been in the jail and at any point in time he can come forward with any information, counsel or no counsel. He has the opportunity if he is saying someone else committed this crime and I have knowledge of it and I choose not to come forward. He has asserted on the record. He asserted during his case in chief, during his direct examination he chose not to do so because he was scared of the defendant.[3]

THE COURT: All right. I will hear you as to what he said.

MS. BYNUM: If I could respond to that, Your Honor. I mean he at arraignment entered a plea of not guilty. He is entitled to maintain that plea of not guilty, hire counsel to work this case for him and require the state to prove its case

---

[3] Given the context, it appears the prosecutor misspoke, and he meant to say, "because he was scared of Dominique."

beyond a reasonable doubt. He does not have -- I don't think he should be crossed on what he didn't come forward with.

THE COURT: I am going to sustain the objection.

(Sidebar discussion concluded.)

MR. GARRISON: One moment, Your Honor.

THE COURT: Yes, sir.

BY MR. GARRISON:

Q Sir, you indicated during that 20 -- approximately 19-day period of time from October the 2nd of 2009 to October the 21st of 2009 you didn't tell anybody, about what had happened that you observed, correct?

A No, sir.

Q You made a decision not to do so even though you can do so anonymously, isn't that correct, sir?

A I was not aware of that.

Q You didn't attempt to say at any point in time I've got information on a murder, I don't want to give my name, who can I talk to, did you?

A No, sir.

Q You never once took advantage of the Crime Stoppers that is all over T.V. getting money anonymously?

A I'm not sure how that works.

Q You're not sure how that works?

14

          A No, sir.

Doc. 1 at 4-11 (citing Ex. B6 at 630-34).

Respondents argue that the claim is unexhausted because Petitioner failed to properly preserve the claim at trial by not citing "any federal constitutional basis for his objection." Doc. 19 at 9. Respondents also address the claim on the merits. <u>Id.</u> at 35-40.

Petitioner, through counsel, raised this claim on direct appeal. <u>See</u> Ex. B7 at 19-29. The state responded, arguing that the issue was not properly preserved, the alleged error was not fundamental, and the comments did not affect the verdict and were harmless. <u>See</u> Ex. B8 at 9-19. Petitioner filed a counseled reply. <u>See</u> Ex. B9. The First District Court of Appeal per curiam affirmed Petitioner's judgment of conviction without issuing a written opinion. <u>See</u> Ex. B10.

To the extent Petitioner exhausted the federal nature of this claim and the First DCA adjudicated the claim on the merits, the Court defers to the state court's ruling. Upon thorough review of the record, this Court concludes that the state court's adjudication was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Therefore, Ground One is due to be denied.

Assuming the claim is not entitled to deference, the claim has no merit. Defense counsel objected to the state's line of questioning involving Petitioner's post-arrest silence, and the trial court sustained the objection. The state's follow-up questions were limited to Petitioner's actions between the time of the murder and his arrest. Defense counsel did not lodge another objection to the state's questions relating to Petitioner's pre-arrest actions.

Regardless, there was ample evidence outside of this alleged improper questioning to support Petitioner's conviction, such that this purported error did not have a "'substantial and injurious effect or influence in determining the jury's verdict.'" Granda v. United States, 990 F.3d 1272, 1292 (11th Cir. 2021) (quoting Davis v. Ayala, 576 U.S. 257, 267-68 (2015)). As summarized by Respondents, the following testimony and evidence was presented at trial:

> • Rishod McHellon testified that he saw Petitioner put the gun to the head of the victim (Antonio Colon-Rivera, a.k.a., "ToJo") and shoot him. (Ex. B4. pp. 246-247, 267-71).
>
> • Michelle Brown testified that she was hanging out at the Gregory Cove Apartments on October 2, 2009 (the date of the homicide) and observed Petitioner drive up in a burgundy colored car. (Ex. B4. pp. 326-30). Ms. Brown recalled that she was standing 15-20 feet away from Petitioner when he got out of the car, pulled a gun from his pocket, pointed it at the victim's head and fired. (Ex. B4. pp. 333-35). She also stated that she watched Petitioner drive away as the victim lay on the ground with "blood running from out [] his head." (Ex. B4. pp. 337-38).

16

• Brittany G[]over testified that she knew Petitioner (a.k.a., "Mike") from school, and that on the day the victim was shot, she observed Petitioner and the victim seated in a small car, talking. (Ex. B4. pp. 351-53). Ms. G[]over further testified that fifteen seconds after walking away from Petitioner and the victim, she heard a gunshot. (Ex. B4. p. 354). When she turned around, she saw the victim "on the ground and I seen Mike pull off in the car." (Ex. B4. p. 354).

• The State's ballistics expert testified that a spent cartridge found at the crime scene was fired from the same gun found in Petitioner's pocket when he was arrested. (Ex. B5. pp. 4[6]9-[7]1, 475).

• Rishod McHellon testified that on the day of the shooting, he and the victim had been hanging out with their mutual friend, Darnell Caddell, in the parking lot of the Gregory Cove Apartments (where Caddell resided with his mother). (Ex. B4. pp. 250, 254-55). McHellon recalled that shortly before the shooting, the victim borrowed Caddell's mother's phone to call someone. (Ex. B4. pp. 255-56). McHellon did not know who the victim had called (Ex. B4. p. 256); however, a few moments after the victim hung up the phone, a maroon Nissan pulled into the parking lot of the Gregory Cove Apartments with Petitioner behind the wheel. (Ex. B4. p. 2[56-]58).

• Approximately three weeks later, a maroon Nissan fitting the description of the getaway car (and registered to Petitioner's mother) was located at the home of Petitioner's parents. (Ex. B5. pp. 423-25).

• Investigators established through phone records that three days after the victim's murder, a cell phone found in the maroon Nissan registered to Petitioner's mother had been assigned a new phone number at the customer's request. (Ex. B5. pp. 423-29). Phone records also established that ten minutes before the homicide was called in, the phone the victim

17

> borrowed from Caddell's mother was used to place a
> call to the number previously assigned to the cell
> phone found in the maroon Nissan registered to
> Petitioner's mother. (Ex. B5. pp. 430-32).

Doc. 19 at 38-39.

Considering the record, the Court finds the state's questioning of Petitioner did not result in "actual prejudice." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993). As such, Petitioner is not entitled to federal habeas relief on Ground One.

**B. Ground Two**

Petitioner asserts that the trial court erred by allowing the state to elicit testimony from witness Rishod McHellon about threats McHellon received prior to trial regarding his testimony. Doc. 1 at 13-14. Petitioner acknowledges that the state clarified the threats were not from Petitioner. <u>Id.</u> at 14. Petitioner, however, argues that this testimony was not relevant or material, and "its probative value was substantially outweighed by the danger of unfair prejudice and misleading the jury." <u>Id.</u> at 14-15 (citing Fla. Stat. § 90.402). Respondents contend this claim is unexhausted "due to Petitioner's failure to fairly present any federal constitutional basis for his claim in the trial court or on direct appeal." Doc. 19 at 12 (citations omitted). Respondents alternatively address the claim on the merits. <u>Id.</u> at 40-44.

Petitioner, through counsel, raised this claim on direct appeal in terms of state law only. See Ex. B7 at 29-33. The state responded on the merits. See Ex. B8 at 20-25. Petitioner filed a counseled reply. See Ex. B9. The First DCA per curiam affirmed Petitioner's judgment of conviction without issuing a written opinion. See Ex. B10.

As noted above, Petitioner's appellate brief addressed this issue in terms of state law only and not as a violation of his federal constitutional rights. Thus, he failed to allow the state courts the opportunity to resolve the federal nature of his claim.[4] Therefore, this claim is unexhausted and procedurally barred. Petitioner has failed to show cause to excuse the procedural default or resulting prejudice. Nor has Petitioner shown that a fundamental miscarriage of justice would result if the Court did not address the claim on the merits. Thus, the claim is due to be denied.

Even assuming this claim was not procedurally barred,

> the general rule is that a federal court will not review a trial court's actions with respect to the admission of evidence. A state evidentiary violation in and of itself does not support habeas corpus relief. Before such relief may be granted, the violation must rise to the level of a denial of fundamental fairness.

---

[4] Notably, in the Petition, the only reference to federal law is in the title of this ground; the substance of Ground Two only addresses state law.

<u>Shaw v. Boney</u>, 695 F.2d 528, 530 (11th Cir. 1983) (internal quotations and citations omitted). Considering the record, the Court finds that Petitioner has failed to show his trial was rendered fundamentally unfair by allowing this testimony. Thus, Ground Two is due to be denied.

### C. Ground Three

Petitioner argues the trial court erred by clearing the courtroom during witness Rishod McHellon's testimony in violation of Petitioner's Sixth and Fourteenth Amendment rights. Doc. 1 at 16. Citing to Florida Supreme Court cases, Petitioner claims that the trial judge failed to address "the legal standard governing the closing of the courtroom to the public." <u>Id.</u> at 17.

Respondents contend that this "claim is unexhausted due to Petitioner's failure to fairly present any federal constitutional basis for his claim in the trial court or on direct appeal." Doc. 19 at 14 (citations omitted). Respondents alternatively address the claim on the merits. <u>Id.</u> at 44-49.

Petitioner, through counsel, raised this claim on direct appeal. <u>See</u> Ex. B7 at 33-35. Petitioner addressed the claim in terms of state law only. <u>See</u> <u>id.</u> The state responded by arguing that the issue was not preserved because Petitioner's trial counsel argued differently in state court, and regardless, that the closure was reasonable in response to the witness being "scared to death" and it was not an abuse of discretion. <u>See</u> Ex. B8 at 25-28. Petitioner filed a

counseled reply. See Ex. B9. The First DCA per curiam affirmed Petitioner's judgment of conviction without issuing a written opinion. See Ex. B10.

The Court agrees with Respondents that this claim is unexhausted. Petitioner's appellate brief addressed this issue in terms of state law and procedure only, and not as a violation of his federal constitutional rights. Thus, he failed to allow the state courts the opportunity to resolve the federal nature of his claim.[5] Therefore, this claim is unexhausted and procedurally barred. Petitioner has failed to show cause to excuse the procedural default or resulting prejudice. Nor has Petitioner shown that a fundamental miscarriage of justice would result if the Court did not address the claim on the merits. Thus, the claim is due to be denied.

Moreover, whether the state court violated state law regarding the closure of the courtroom to the public is purely an issue of state law that is not cognizable on federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). And even assuming Petitioner properly presented an issue of federal constitutional dimension, the

---

[5] Notably, in the Petition, the only reference to federal law is in the title of this ground; the substance of Ground Three only addresses state law.

claim is without merit. Considering the evidence of Petitioner's guilt, it cannot be said that the outcome of his case would have been different had the trial court not closed the courtroom to the public during McHellon's testimony.[6] The alleged error did not render Petitioner's trial fundamentally unfair, or "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotations and citation omitted). Petitioner is not entitled to federal habeas relief on Ground Three.

### D. Ground Four

According to Petitioner, the "cumulative errors" in his trial violated his Sixth and Fourteenth Amendment rights. Doc. 1 at 19 (emphasis and capitalization omitted). He argues that his "case boiled down to a credibility contest, thus heightening the effect and importance of each error detailed." Id. Respondents argue that the "claim is unexhausted due to Petitioner's failure to fairly present any federal constitutional basis for his claims in grounds one, two and three in the trial court or on direct appeal of his judgment and sentence."

---

[6] "Out of an abundance of caution" and in an effort to "not draw undue attention to the fact that people are being removed from the courtroom," the trial judge ordered that the courtroom be cleared for the state's opening statement (the defense reserved until immediately prior to his case in chief) and McHellon's testimony; McHellon was the state's first witness. See Ex. B4 at 217-21, 224.

Doc. 19 at 16 (record citations omitted).[7] Respondents also address the claim on the merits. Id. at 49.

Assuming this claim is properly exhausted, the Court finds it has no merit. As explained herein, none of Petitioner's individual claims warrant relief; thus, there is nothing to accumulate. See Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012). The alleged errors, neither individually nor cumulatively, deprived Petitioner of a fair trial or due process. Considering the record, the Court finds that Petitioner is not entitled to federal habeas relief on Ground Four.

### E. Ground Five

According to Petitioner, his trial counsel was ineffective for failing to object to the state's closing argument "which used Petitioner's courtroom presence to discredit his testimony and bolster the [state's] witnesses' testimony," in violation of Petitioner's Sixth and Fourteenth Amendment rights. Doc. 1 at 22 (emphasis and capitalization omitted). Respondents contend that the claim is unexhausted because Petitioner raised it in his postconviction motion filed pursuant to Florida Rule of Criminal Procedure 3.850, but he failed

---

[7] Petitioner raised the cumulative error claim in his Petition before filing the Supplement. The Court, however, considers all grounds raised in addressing this claim.

to address it on appeal of the denial of his motion. Doc. 19 at 17-19. Respondents

also address the claim on the merits. See id. at 50-51.

In denying this claim, the state postconviction court found as follows:

> Defendant next claims that counsel was ineffective in failing to object to comments made by the prosecutor during closing argument. He alleges that if counsel had objected, the outcome of his trial likely would have been different.

> A prosecutor's statements during closing argument require reversal only if the comments are both improper and prejudicial to a substantial right of the defendant. United States v. Jacoby, 955 F.2d 1527, 1541 (11th Cir. 1992). Such alleged misconduct must be reviewed in light of the particular facts of the case and in the context of the entire record. Id. at 1541. Under Florida law, a prosecutor's statements are to be weighed against record evidence, and reversal is warranted only when there is no support for them in the record. Roundtree v. State, 229 So. 2d 281 (Fla. 1st DCA 1969), appeal dism., 242 So. 2d 136 (Fla. 1970). Each comment alleged to be improper is analyzed below.

> . . . .

> **Comment #7**:

> > [PROSECUTOR]: Does his testimony agree with the other evidence and other testimony in this case? Well, his testimony agrees with what he wants it to and then it conflicts with what he wants it to.

> > . . . .

24

[PROSECUTOR]: Admit what you can't deny and deny what you can't admit. He's different, also, in one other important respect.

Remember that every witness who paraded through here he got a preview. He got to see it. He got to listen. He admitted what he can't deny. They pointed him out. It was his car. It was his phone. He denies what he can't admit. He denies shooting the victim. He denies that he didn't know [sic] how that gun, the murder weapon, got into a Crown Royal bag but supposedly he was being threatened with it all the time.

Defendant alleges that counsel should have objected to these comments because they "suggested [Defendant] tailored his testimony after listening to the witnesses testify" and inferred he "was making up a defense as he listened to witnesses[.]"

The Court finds that the prosecutor's comments were entirely proper. See Portuondo v. Agard, 529 U.S. 61 (2000) (Prosecutor's comments during summation, calling jury's attention to fact that petitioner had opportunity to hear other witnesses testify and to tailor his testimony, did not unlawfully burden his right to be present at trial, to be confronted with witnesses, or to testify on his own behalf and did not violate his right to due process). If counsel had objected to the comment, the objection would have been overruled. As such, the Court finds that Defendant has failed to meet either the performance or the prejudice prong of the Strickland test regarding counsel's failure to object to the comment.

. . . .

Ground Eight is without merit in its entirety.

Ex. C1 at 28, 34-35, 40. Petitioner appealed, and the First DCA per curiam affirmed the denial of his Rule 3.850 motion without issuing a written opinion. Ex. C4. Petitioner requested rehearing, clarification, or issuance of a written opinion, Ex. C5, which was denied, Ex. C6.

To the extent Petitioner properly exhausted this claim and the First DCA adjudicated the claim on the merits, this Court defers to the state court's adjudication. Upon thorough review of the record, this Court concludes that the state court's adjudication was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Petitioner is not entitled to federal habeas relief on this claim.

Even assuming the state court's adjudication is not entitled to deference, the claim has no merit.

> [W]e see no reason to depart from the practice of treating testifying defendants the same as other witnesses. A witness's ability to hear prior testimony and to tailor his account accordingly, and the threat that ability presents to the integrity of the trial, are no different when it is the defendant doing the listening. Allowing comment upon the fact that a defendant's presence in the courtroom provides him a unique opportunity to tailor his testimony is appropriate— and indeed, given the inability to sequester the defendant, sometimes essential—to the central function of the trial, which is to discover the truth.

Portuondo, 529 U.S. at 73. Trial counsel did not render ineffective assistance by failing to make a meritless objection. And even assuming deficient performance, Petitioner has not shown prejudice. He fails to show a reasonable probability exists that but for counsel's alleged deficiency, the outcome of his trial would have been different. Thus, Ground Five is due to be denied.

### F. Ground Six[8]

Petitioner claims that his trial counsel was ineffective for failing to subpoena an exculpatory witness, Colette Everson, in violation of his Sixth and Fourteenth Amendment rights. Doc. 17 at 1. Petitioner asserts that trial counsel requested a new trial at a sidebar during the trial because the trial court erroneously denied the defense's request to allow Everson to testify telephonically. Id.[9] Petitioner argues that the issue arose in the first place because his trial counsel was ineffective for failing to timely subpoena Everson. Id. at 2. He further argues that, as an alternative to her testifying, counsel also failed to admit Everson's deposition into evidence. Id. He acknowledges that he did not previously raise this claim in state court, and he requests this Court consider the claim under the exception outlined in Martinez, "because [he] did

---

[8] Petitioner refers to this Ground as Ground A. Doc. 17 at 1.

[9] See Ex. B5 at 541-46 (discussion regarding Everson testifying telephonically).

not have professional legal representation during his collateral attack in state proceedings." Id. at 3.

In Martinez, the Supreme Court recognized a narrow exception to the rule that an attorney's error in a postconviction proceeding does not constitute cause for a procedural default:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

Id. at 17. To establish cause under Martinez, Petitioner must demonstrate that the defaulted ineffective assistance of trial counsel claim "is a substantial one, which is to say that [he] must demonstrate that the claim has some merit." Id. at 14; see also Lambrix v. Sec'y Fla. Dept. of Corr., 851 F.3d 1158, 1164 (11th Cir. 2017). A claim is not substantial if it lacks merit or is wholly without factual support. See Martinez, 566 U.S. at 15-16.

Petitioner fails to allege the substance of Everson's testimony.[10] Thus, this claim is entirely speculative as he fails to explain how her testimony would have affected the outcome of his trial—especially in light of the evidence

---

[10] Nor did defense counsel provide any detail of Everson's proposed testimony. See Ex. B5 at 542 (defense counsel stating, "I do feel she is somewhat vital to the defense.")

presented. Thus, even assuming deficient performance,[11] Petitioner has not shown prejudice. He has failed to show a reasonable probability exists that but for counsel's alleged error, the outcome of his trial would have been different. As such, the Court finds this claim is not substantial and is due to be denied.

### G. Ground Seven[12]

Petitioner argues that his trial counsel was ineffective for not moving for a mistrial after the state's witness Michelle Brown made an "impermissible and unreliable in court identification" of Petitioner. Doc. 17 at 3 (emphasis and capitalization omitted). Petitioner contends that during her pretrial deposition, Ms. Brown testified that she "'didn't get a good look'" at the person who committed the murder, and she generally described him as "being 'a little darker' than her with 'little twist things' in his hair." Id. at 4. Also during the police investigation, Ms. Brown "picked out someone other than Petitioner" in a photo lineup. Id.

Petitioner claims that more than six months passed between the murder and his trial, and "he'd been deprived of direct contact with the sun which

---

[11] After hearing defense counsel's explanation and the state's contention that it had difficulty locating Everson for deposition, the trial judge stated, "That should not be a reflection . . . of Mr. Peeler's counsel in this case or frankly the state. Both sides have performed at a very high level. Both have performed at a very high professional level and Mr. Peeler has enjoyed the benefit of legal representation in a manner that is consistent with the highest standard that the bar can offer." Ex. B5 at 543-44.

[12] Petitioner refers to this Ground as Ground B. Doc. 17 at 3.

naturally made Petitioner even lighter than he was six months prior." Id. According to Petitioner, "it is reasonable to conclude that where Ms. Brown's pre[trial] identification of someone other than Petitioner, during which time [Petitioner's] appearance was actually closer to the general description she had given merely three months prior, renders her resulting in-court identification unreliable where his appearance had changed considerably and even more time had lapsed between the alleged crime and the actual confrontation." Id. Petitioner acknowledges that he did not previously raise this claim in state court, and he requests this Court consider the claim under the exception outlined in Martinez, "because [he] did not have professional legal representation during [his] collateral attack in state proceedings." Id. at 6.

At trial, Ms. Brown testified. See Ex. B4 at 323-48. She identified Petitioner as the shooter and described the car he was driving on the day of the shooting. She explained what she observed that day. She also recognized that she previously picked out a photograph of a suspect that looked similar to the shooter. Defense counsel cross-examined Ms. Brown on the fact that she had previously picked out a different suspect from a photospread and that Petitioner did not look the same at trial as he did on the day of the shooting.

There was no basis for defense counsel to move for a mistrial based on Ms. Brown's in-court identification of Petitioner. Ms. Brown testified that she could identify the shooter during trial based on her recollection, and she

identified Petitioner. The jury was left to consider Ms. Brown's credibility, and

Petitioner's counsel argued as much in her closing:

> You heard from Michelle Brown, Ms. Brown, about 13 years old. She, too, was shown a photospread in this case just a few weeks after this happened and was not able to identify my client out of that photospread, but she comes in here today - - I'm sorry. She comes in here yesterday just over six months later, takes the stand and in open court identifies my client as the person she saw that day.

> The state keeps expressing to you and keeps harping on the fact that my client looks so different. Wouldn't it make sense, ladies and gentlemen, that having seen my client in the photospread three weeks after - - approximately three weeks after this happened and not selecting him would be a more accurate identification than this lady - - than this young girl sitting on the stand selecting the only young black male in the courtroom, the only person on trial who the state has been arguing looks so different than the day in question and she stands up and points to him sitting right next to his attorney?

> Please consider that identification and compare it to the one that she made that she misidentified a few weeks after this happened. Reasonable doubt, ladies and gentlemen.

Ex. B6 at 682-83.

Even assuming defense counsel was deficient in the manner Petitioner

suggests, Petitioner has not shown prejudice. He has not shown a reasonable

probability exists that but for counsel's alleged error the result of his trial would

have been different. Thus, Ground Seven is not substantial and due to be denied.

### H. Ground Eight[13]

Petitioner argues that the postconviction court erred by not providing him with an opportunity to amend his Rule 3.850 motion before denying his claims as insufficiently pled. Doc. 17 at 6. He contends that this resulted in a denial of his due process rights. Id. at 6-7. He argues that the state court's duty to provide him an opportunity to amend is set forth in Spera v. State, 971 So. 2d 754 (Fla. 2007), which he likens to the Supreme Court's admonition in Sanders v. United States, 373 U.S. 1 (1963), advising "lower federal courts to exercise caution before dismissing petitions, especially ones prepared without assistance, that instead might be amended to state valid grounds for relief." Doc. 17 at 6-7; see Doc. 27 at 11. Respondents assert that this "claim is not cognizable for federal habeas review" because it does not affect the legality of Petitioner's imprisonment and is based on state law. Doc. 19 at 24-25. Alternatively, Respondents argue that the claim is without merit. Id. at 58-60.

In Petitioner's Rule 3.850 proceeding, the only ground that the state court found to be insufficiently pled was ground two; the court, however, also

---

[13] Petitioner refers to this Ground as Ground C. Doc. 17 at 6.

addressed the ground on the merits. All other grounds were found to be either procedurally barred or without merit.

As to ground two, the postconviction court ruled as follows:

### *Ground Two*:

1.    Relevant Facts:

Jury selection was held on Monday and Tuesday, April 12-13, 2010. At the conclusion of jury selection on Tuesday, defense counsel informed the Court that he had been made aware on the previous Friday that State witness Rishod McHellon had been receiving threatening telephone calls from a blocked number, and he had not returned the prosecutor's phone messages because he was "quite frankly scared to death." The caller had phoned multiple times threatening "in no uncertain terms that there would be consequences for him if he were to testify in this case." The prosecutor stated that he had no basis to link those calls to Defendant and would not be eliciting testimony about the threatening calls during McHellon's direct examination.

In response, defense counsel made the following comment:

[DEFENSE COUNSEL]: I know another thing [the prosecutor] was wanting to do is clear the courtroom at the time . . . that witness takes the stand[.] . . . For the record I would also have an objection to that. . . . I think that . . . his testimony might be bolstered and the weight of it just heightened if the courtroom is cleared.

The Court ruled that "[o]ut of an abundance of caution," the courtroom would be cleared during

opening statements as well as during McHellon's testimony - the State's first witness. "I believe we can do that in a manner, however, that would not draw undue attention to the fact that people are being removed from the courtroom depending on how many people are here[.]"

As detailed in the Underlying Facts of the Crime supra, McHellon testified on direct examination that he watched Defendant shoot Colon-Rivera. On cross-examination, defense counsel twice elicited that McHellon wanted Defendant held accountable for Colon-Rivera's death.

The prosecutor argued that defense counsel's cross-examination had created an inference that McHellon was testifying willingly for the purpose of offering fabricated testimony to get Defendant convicted. The Court agreed, finding that defense counsel's questions on cross examination had opened the door to testimony about the phone threats. However, the prosecutor was still precluded from attempting to draw an inference that the calls had been made by Defendant.

The prosecutor then elicited on redirect examination that McHellon had not wanted to testify because he had received threatening calls from an unknown person during the prior two weeks. He was testifying only because he was under subpoena.

After Defendant was convicted as charged, defense counsel filed a motion for new trial in which he alleged that the Court had erred in allowing the State to close the courtroom during McHellon's testimony, arguing that it had added greater weight to his testimony. The motion was denied.

2.  <u>The Claim</u>:

Defendant claims in Ground Two of his postconviction motion that counsel was ineffective in failing to "offer up a proper objection" to the closure of the courtroom for McHellon's testimony. He claims that counsel should have argued that the threats were hearsay and that there was no evidence to corroborate them. He also alleges that counsel should have objected to the closure because the State was unable to show that 1) closure was necessary to prevent a serious and imminent threat to the administration of justice; 2) that there was no alternative available other than a change of venue; or 3) that closure would not be broader than necessary to accomplish the purpose. Defendant alleges that if counsel had put forth these specific objections, "the trial court would likely have prohibited the highly prejudicial inferences regarding threats." Additionally, the State would not have been able to meet the three-prong test for closure, and the courtroom would not have been closed. Lastly, he urges that if counsel had preserved the issue for direct appeal, he "would have prevailed."

Initially the Court finds that Defendant's claim is facially insufficient because he fails to allege there is a reasonable probability that but for counsel's omissions, the outcome of his trial would have been different. <u>See, e.g.</u>, <u>Christie v. State</u>, 737 So. 2d 1157 (Fla. 1st DCA 1999) (Postconviction claim that trial counsel was ineffective in failing to adequately advise defendant was legally insufficient absent allegations that outcome of trial would have been different but for alleged ineffectiveness of counsel). The Court further finds that, as explained <u>infra</u>, Defendant is not entitled to amend this claim because it cannot reasonably be amended in good faith to state a sufficient claim. <u>See</u> <u>Spera v. State</u>, 971 So. 2d 754, 762 (Fla. 2007) (Permitting postconviction movants to amend claims "only if they can be amended in good faith").

The Court finds that McHellon's testimony about the threats was not hearsay. Therefore if counsel had objected to testimony about the threats as uncorroborated hearsay, such an objection would have been overruled.

Defendant also alleges that counsel was ineffective in failing to ask the Court to make the findings required by Miami Herald Publishing Co. v. Lewis, 426 So. 2d 1 (Fla. 1982).

Lewis articulated the prevailing test in Florida for closure of judicial proceedings, concluding that closure is justified where:

> 1. Closure is necessary to prevent a serious and imminent threat to the administration of justice;
>
> 2. No alternatives are available, other than change of venue, which would protect a defendant's right to a fair trial; and
>
> 3. Closure would be effective in protecting the rights of the accused, without being broader than necessary to accomplish this purpose.
>
> 426 So.2d at 6; see also Bundy v. State, 455 So.2d 330, 338 (Fla. 1984) (recognizing adoption of test in Lewis), abrogated on other grounds by Fenelon v. State, 594 So.2d 292 (Fla.1992).

Simpson v. State, 3 So. 3d 1135, 1145 (Fla. 2009), cert. denied, 558 U.S. 839 (2009).

Lewis was an appeal by the media from a ruling of the trial court that closed a pretrial hearing on a

motion to suppress. The supreme court held there is no First Amendment protection of the public's and press's rights to attend a pretrial suppression hearing, and the court summarized guidelines for trial judges to use in applying the three-pronged standard to determine whether closure is appropriate.

Lewis is easily distinguishable from Defendant's case, which involved neither a media issue no[r] a pretrial hearing. The reason for closing the courtroom during a brief portion of Defendant's trial has long-since been recognized as valid. See. e.g., United States v. Eisner, 533 F.2d 987, 993-94 (6th Cir. 1976) (To protect witness who feared testifying in public), cert. denied, 429 U.S. 919 (1976); United States ex rel. Bruno v. Herold, 408 F.2d 125 (2d Cir. 1969) (To protect witness who was afraid of testifying), cert. denied, 397 U.S. 957 (1970); Orlando v. Follette, 384 U.S. 1008 (1966) (To protect witnesses from intimidation). Even where the closure is total and the press, family members and general public are all excluded, but only for a limited and justifiable purpose and period of time, the public trial guarantee has been honored. See, e.g., United States v. Hernandez, 608 F.2d 741, 747-48 (9th Cir. 1979) (To protect witness and his family where safety threatened). All of these federal cases have been cited with approval by at least one Florida appellate court. See Williams v. State, 736 So. 2d 699, 703 (Fla. 4th DCA 1999), receded from on other grounds Alvarez v. State, 827 So. 2d 269 (Fla. 4th DCA 2002), rev. denied, 845 So. 2d 887 (Fla. 2003).

In sum, the Court finds that counsel was not ineffective in failing to ask the Court to make the findings required by Lewis because Lewis was not applicable to the facts of Defendant's case. Furthermore, Defendant has failed to show any prejudice in counsel's failure to ask the Court to make the Lewis findings because the reason for the closure in Defendant's case was legally valid.

Lastly, as to Defendant's claim that he "would have prevailed" if counsel had preserved the issue for direct appeal, the Court notes that Defendant did indeed raise this issue on direct appeal, and the First District implicitly found it to be without merit when it affirmed his conviction and sentence without opinion. Issues that could have been, should have been, or were raised on direct appeal may not be raised in a motion for postconviction relief. Zeigler v. State, 452 So. 2d 537 (Fla. 1984). Proceedings under Rule 3.850 are not to be used as a second appeal. Medina v. State, 573 So. 2d 293 (Fla. 1990). See also Freeman v. State, 761 So. 2d 1055, 1067 (Fla. 2000) (Claims that should have or could have been raised on direct appeal cannot be relitigated under the guise of ineffective assistance of counsel); Jessie v. State, 726 So. 2d 356, 356-57 (Fla. 5th DCA 1999) ("This argument appears to be an attempt to re-litigate substantive matters which should have been presented on direct appeal, under the guise of ineffective assistance of counsel.") As such, the Court finds that this last claim in Ground Two is procedurally barred.

Ex. C1 at 12-16 (internal record citations and footnote omitted). On appeal, Petitioner argued that the postconviction court erred by summarily denying his Rule 3.850 motion without providing him an opportunity to amend. See Ex. C2. The First DCA per curiam affirmed the denial of Petitioner's postconviction motion without issuing a written opinion. Ex. C4. Petitioner requested rehearing, clarification, or issuance of a written opinion, Ex. C5, which was denied, Ex. C6.

Insofar as the First DCA adjudicated the claim on the merits, this Court addresses the claim in accordance with the deferential standard for federal

court review of state court adjudications. Upon thorough review of the record, this Court concludes that the state court's adjudication was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented.

Alternatively, the Court finds the claim is without merit. Failing to provide Petitioner with an opportunity to amend his postconviction motion does not automatically rise to the level of a violation of his federal due process rights. Regardless, the postconviction court found that Petitioner was not entitled to amend his ground two "because it cannot reasonably be amended in good faith to state a sufficient claim." And the postconviction court addressed the claim on the merits. Upon review, this Court finds that Ground Eight is due to be denied.

In light of the foregoing, it is

**ORDERED**:

1.      The Petition (Doc. 1) and Supplement (Doc. 17) are **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.      If Petitioner appeals, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any

motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[14]

3.    The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 27th day of March, 2023.



TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 3/22
c:
Michael A. Peeler, #J41513
Counsel of Record

---

[14] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.